UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CYNTHIA HORKEY,**

    Plaintiff,

  v.                                                       Case No. 20-CV-752

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security[1],

    Defendant.

---

### DECISION AND ORDER

---

Cynthia Horkey seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed.

### BACKGROUND

On December 30, 2016, Horkey filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on December 1, 2015 (Tr. 13) due to osteoarthritis, bulging discs, degenerative disc disease, fibromyalgia, and depression (Tr. 222). Horkey's application was denied initially and upon reconsideration. (Tr. 13.) Horkey filed a request for a hearing, and a hearing was held before an Administrative Law Judge ("ALJ") on January 22, 2019. (Tr. 28–58.) Horkey testified at the hearing, as did Pamela Joann Harris, a vocational expert. (Tr. 28.)

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

In a written decision issued April 1, 2019, the ALJ found that Horkey had the severe impairment of degenerative disc disease. (Tr. 15.) The ALJ also considered Horkey's impairments of anxiety and depression, but found them non-severe. (*Id.*) The ALJ found that Horkey did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 17.) The ALJ further found that Horkey had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (Tr. 17–21.) The ALJ found that Horkey was capable of performing her past relevant work as a hospital cleaner, institutional cleaner, and companion. (Tr. 21.) As such, the ALJ found that Horkey was not disabled from December 1, 2015, through the date of the decision. (Tr. 22.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Horkey's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

An ALJ engages in a five-step sequential evaluation to determine whether a claimant is disabled in which the ALJ asks: (1) is the claimant currently employed; (2) does the claimant have a severe impairment; (3) does the claimant have an impairment which meets or equals one of the impairments listed by the Commissioner, as disabling; (4) can the claimant perform their past relevant work; and (5) can the claimant perform other work in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at

868. The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868; *Knight*, 55 F.3d at 313.

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. Application to This Case

Horkey argues that she has chronic progressive demyelinating neuropathy, which causes numbness, tingling, and weakness in her lower extremities, affecting her ability to walk, stand, and balance. (Pl.'s Br. at 16–21, Docket # 13.) She argues that the ALJ erred by

3

failing to properly account for these alleged symptoms secondary to her neuropathy in the RFC. (*Id.*)

As an initial matter, the ALJ did not address whether Horkey's neuropathy was a medically determinable impairment at step two of his disability analysis. Although Horkey frames the issue as an error at step three in determining RFC, I must first determine whether the ALJ erred at step two. 20 C.F.R. § 404.1521 (stating that at step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments). This question is important because an ALJ need only consider medically determinable impairments when determining the RFC. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In other words, if Horkey's neuropathy is not a medically determinable impairment, then the ALJ does not err by failing to include limitations for it in the RFC.

To be a "medically determinable impairment," the impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. An EMG established that Horkey suffered from progressive demyelinating neuropathy (Tr. 460), a diagnosis confirmed multiple times in the record (Tr. 423, 442, 446, 460, 462, 465–66, 513) and discussed at length during the administrative hearing (Tr. 32, 37–41, 44–47). Thus, Horkey's progressive demyelinating neuropathy is undoubtedly a medically determinable impairment. Once a medically determinable impairment is established, the ALJ then determines whether the impairment is severe. 20 C.F.R. § 404.1521. Because the ALJ did not determine whether Horkey's neuropathy was a

4

medically determinable impairment, he obviously did not address whether the impairment was severe. Thus, the ALJ erred at step two of his disability analysis.

This error, however, does not automatically require remand. A step two error can be deemed harmless if the ALJ nonetheless accounted for the limitations in setting the RFC. *See Masch v. Barnhart*, 406 F.Supp.2d 1038, 1054 (E.D. Wis. 2005). While the ALJ did not specifically consider whether Horkey's neuropathy was a medically determinable impairment, he clearly did consider both the EMG findings showing neuropathy and her alleged symptoms related to it. (Tr. 18–20.) Horkey's case is somewhat unique, however, in that none of her treating medical providers attribute her alleged symptoms related to walking, standing, and balance to her neuropathy. (Tr. 347) ("patient appears to have some balance problems unclear exact underlying etiology for that. . . .") Horkey's treating family practice physician, Dr. Dhawni Vaishnav, stated that she was "not sure if [Horkey's walking issue was] really related to her neuropathy." (Tr. 462.) And her treating neurologist believed that her neuropathy "should not cause any balance problems." (Tr. 460.) As such, the Commissioner argues that the ALJ was not required to provide restrictions in the RFC related to neuropathy because Horkey was unable to demonstrate that her alleged symptoms were actually related to any medically determinable impairment. (Def.'s Br. at 9, Docket # 14.)

The Commissioner is correct that under the applicable regulations, a claimant's statements regarding her symptoms alone will not establish disability. 20 C.F.R. § 404.1529(a). Rather, there "must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the . . . symptoms alleged." *Id.* Again, while Horkey's treating medical providers

5

were uncertain as to the exact etiology of her balance issues, they affirmatively believed that her neuropathy was *not* the cause.

While Horkey acknowledges her treating doctors' opinions regarding the relation between her alleged symptoms and her neuropathy, she argues that "[a]s a practical matter, despite the doctor's opinion, it is foreseeable that having numbness and tingling from the knee down could cause some instability with walking and standing." (Pl.'s Br. at 19–20.) It is true, theoretically, that neuropathy *could* reasonably be expected to produce the type of symptoms Horkey alleges. But in Horkey's specific case, however, her treating medical providers clearly believe that she suffers from a form of mild familial neuropathy that *would not* be reasonably expected to produce her alleged symptoms. (Tr. 460.) The ALJ specifically considered this evidence from her treating doctors when formulating the RFC. Horkey points to no evidence beyond her own suppositions that her neuropathy caused her alleged symptoms. Thus, the ALJ did not err in failing to include balance, standing, and walking limitations in the RFC.

Even assuming, however, that Horkey's symptoms allegedly limiting her ability to walk, stand, and balance did stem from one or more of her medically determinable impairments, Horkey has not demonstrated that the ALJ erred pursuant to SSR 16-3p in evaluating and rejecting the alleged severity of her subjective symptoms and limiting her to a full range of light work.[2] The ALJ specifically considered and rejected Horkey's assertion that she could sit for only 15 minutes, walk for one block, and stand for only 10 minutes. (Tr. 18.) The ALJ provided several reasons for rejecting her claims. Specifically, he considered the lack of a treating physician's opinion assigning any restrictions, the opinions of the State Agency

---

[2] A full range of light work requires either standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday (with intermittent sitting during the remaining time) or sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls. SSR 83-10.

consultants that she could perform a full range of light work, physical examinations generally showing that she was neurologically intact and had normal bilateral lower extremity strength, and inconsistencies between her testimony and the medical records (Tr. 18–20).

Of the ALJ's stated reasons, Horkey challenges the ALJ's reliance on the State Agency consultant's opinions and on the medical records showing normal examination findings. Both State Agency consultants at the initial and reconsideration levels opined that Horkey could perform the full range of light work. (Tr. 67–69, 84–86.) Horkey acknowledges that the ALJ is generally entitled to rely on the State Agency consultants' opinions (Pl.'s Reply Br. at 3, Docket # 15), and does not dispute that there are no contrary opinions in the record establishing more restrictive limitations from her treating providers. She argues, however, that the ALJ should not have relied on the State Agency consultants' opinions in this case because their reviews were conducted in July and November 2017 and Horkey did not attend the consultative examination with the neurologist until December 2017, who gave her the diagnosis of a "rare type of neuropathy." (*Id.*)

This argument is unpersuasive. During Horkey's consultation with neurologist Dr. Barend Lotz on December 11, 2017, he noted that she "comes to see me with a *known* distal polyneuropathy." (Tr. 516) (emphasis added.) Furthermore, in opining her ability to perform a full range of light work, the State Agency consultants did review multiple records in which Horkey complained of numbness and tingling in the legs and physical examinations that showed diminished strength in the lower extremities. (Tr. 68–69, 85–86.) Despite these records, the State Agency consultants still opined that Horkey was capable of light work.

Finally, while Horkey acknowledges that the record does contain evidence of normal physical examinations, she argues that the record also contains plenty of examples of contrary

7

evidence, such as an examination with her treating neurologist, Dr. James Napier, on October 24, 2017 in which he noted that she presented with a "very impaired gait" and suggested "physical therapy and walker." (Pl.'s Reply Br. at 4, citing Tr. 488.) But the ALJ did consider this visit, citing the doctor's examination findings of diminished sensation and deep tendon reflexes, and limited range of motion due to her report of increased pain with flexion and extension. (Tr. 20.) The ALJ also considered other abnormal physical examination findings, such as: 4/5 strength in the right lower leg on April 18, 2017. (Tr. 19, citing Tr. 374.) An ALJ need not specifically address every piece of evidence in the record, as long as he provides a "logical bridge" between the evidence and his conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). And this is not a case where the ALJ cherry-picked the record, citing evidence favoring non-disability and ignoring evidence to the contrary.

Again, this case is somewhat unique in that not only did Horkey's treating medical providers fail to provide any opinions regarding Horkey's alleged limitations, her own treating physician, Dr. Vaishnav, affirmatively stated that her neuropathy "will not be a disabling form of neuropathy." (Tr. 460.) The ALJ obviously cited this opinion. (Tr. 20.) Horkey argues this was error, however, and her doctor's statement should be disregarded for two reasons. First, she argues that Dr. Vaishnav misread the neurologist's report, erroneously thinking the neurologist opined that Horkey would have numbness in the knees only when he in fact opined that she would have numbness from the knees down. (*Compare* Dr. Vaishnav's record in which she states that the "neurologist . . . feels that this is a mild familial neuropathy which at the most <u>cause numbness of the knees</u> it should not cause any balance problems" (*id.*) (emphasis added), *with* Dr. Lotz's record in which he states that "worst case scenario, [Horkey] will be numb <u>from the knees down</u> when she is 80 years old" (Tr. 517) (emphasis

8

added.) I do not agree that Dr. Vaishnav misunderstood Dr. Lotz's report. While she may have omitted the "from the knees down" statement from her December 12, 2017 record, at Horkey's very next visit on December 27, 2017, she specifically noted that Horkey's numbness and tingling would affect her entire lower extremity by the time she was 80 years old. (*See* Tr. 462 stating that Horkey "was told that she has mild form of peripheral neuropathy which at the most would cause tingling sensation up to the knees," will "not cause any drastic manifestations.") It is clear from the records that Dr. Vaishnav based her opinion regarding Horkey's neuropathy on a correct understanding of Dr. Lotz's reports, as well as on her own examination findings. Second, Horkey argues I should accord Dr. Vaishnav's statement about disability "very little weight" because the ultimate determination of whether an individual is disabled is reserved to the Commissioner. (Pl.'s Br. at 20.) While that is true, the ALJ was not wrong to credit the opinions of Horkey's treating medical providers regarding the severity of her condition, as these doctors presumably have the best insight into her neuropathy and the limitations it causes. As such, the ALJ did not err in this regard.

Thus, while Horkey argues the ALJ erred in crafting her RFC by failing to include limitations in balance, sitting, and standing secondary to her neuropathy, I find the ALJ's decision is supported by substantial evidence and is affirmed.

## CONCLUSION

Horkey argues that the ALJ erred in determining that she was not disabled. I find the decision is supported by substantial evidence. The Commissioner's decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of September, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge